# SCR CIV FORM 1-A
## Notice and Acknowledgment for Service by Mail
# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## Civil Division

Avue Technologies Corporation
_____ *Plaintiff*

V.

Civil Action Number 2006 CA 000637 B

DCI Group, L.L.C.
_____ *Defendant*

# NOTICE

To:    Name Henry M. Stein, Esquire

Address Stein and Stein; 2826 South Carriage Lane; Mesa, AZ 85202

The enclosed summons, complaint and initial order are served pursuant to Rule 4(c)(4) of the Superior Court Rules of Civil Procedure.

You must sign and date the Acknowledgement. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within twenty (20) days after it has been mailed, you (or the other party on whose behalf you are being served) may be required to pay any expenses incurred in serving a summons, complaint and initial order in any other manner permitted by law.

If you do complete and return this form, you (or the other party on whose behalf you are being served) must answer the complaint within twenty (20) days after you have signed, dated and returned the form. If you fail to do so, judgment by default may be taken against you or the relief demanded in the complaint.

This Notice and Acknowledgment of Receipt of Summons, Complaint and Initial Order was mailed on (insert date) February 1, 2006

*Signature* _____

February 1, 2006
Date of Signature

## Acknowledgment of Receipt of Summons, Complaint and Initial Order

I received a copy of the summons, complaint and initial order in the above captioned matter at

(address) 2826 S. Carriage Lane, Mesa, Arizona 85202-180I

*Signature* Henry M. Stein

Relationship to Defedant/Authority
To Receive Service
Attorney

2/6/06
Date of Signature

Form CV(b)-1590/Mar 97



# SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

AVUE TECHNOLOGIES CORPORATION
    Vs.                          C.A. No.     2006 CA 000637 B
DCI GROUP LLC

## INITIAL ORDER

Pursuant to D.C. Code § 11-906 and District of Columbia Superior Court Rule of Civil Procedure ("SCR Civ") 40-I, it is hereby **ORDERED** as follows:

(1) Effective this date, this case has assigned to the individual calendar designated below. All future filings in this case shall bear the calendar number and the judge's name beneath the case number in the caption. On filing any motion or paper related thereto, one copy (for the judge) must be delivered to the Clerk along with the original.

(2) Within 60 days of the filing of the complaint, plaintiff must file proof of serving on each defendant: copies of the Summons, the Complaint, and this Initial Order, and any General Order issued **by the judge** to whom the case is assigned. As to any defendant for whom such proof of service has not been filed, the Complaint will be dismissed without prejudice for want of prosecution unless the time for serving the defendant has been extended as provided in SCR Civ 4(o).

(3) Within 20 days of service as described above, except as otherwise noted in SCR Civ 12, each defendant must respond to the Complaint by filing an Answer or other responsive pleading. As to the defendant who has failed to respond, a default and judgment will be entered unless the time to respond has been extended as provided in SCR Civ 55(a).

(4) At the time and place noted below, all counsel and unrepresented parties shall appear before the assigned judge at an Initial Scheduling and Settlement Conference to discuss the possibilities of settlement and to establish a schedule for the completion of all proceedings, including, normally, either mediation, case evaluation, or arbitration. Counsel shall discuss with their clients **prior** to the conference whether the clients are agreeable to binding or non-binding arbitration. **This order is the only notice that parties and counsel will receive concerning this Conference.**

(5) Upon advice that the date noted below is inconvenient for any party or counsel, the Civil Assignment Office (202) 879-1750 may continue the Conference **once**, with the consent of all parties, to either of the two succeeding Fridays. Request must be made not less than six business days before the scheduling conference date. No other continuance of the conference will be granted except upon motion for good cause shown.

Chief Judge Rufus G. King, III

Case Assigned to: Judge PATRICIA A BRODERICK
Date: _February 1, 2006_
Initial Conference: 9:30 am, Friday, June 02, 2006
Location: Courtroom 112
             500 Indiana Avenue N.W.
             WASHINGTON, DC 20001

CA Form 1

## Superior Court of the District of Columbia
### CIVIL DIVISION
500 Indiana Avenue, N.W., Room JM-170
Washington, D.C. 20001 Telephone: 879-1133

| | |
|---|---|
| Avue Technologies Corporation | 06-0000637 |
| *Plaintiff* | |
| VS. | Civil Action No. [                    ] |
| DCI Group, L.L.C. | |
| *Defendant* | |

### SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty (20) days after service of this summons upon your exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government you have 60 days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the party plaintiff who is suing you. The attorney's name and address appear **below.** If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Room JM 170 at 500 Indiana Avenue. N.W. between 9:00 am. and 4:00 pm., Mondays through Fridays or between 9:00 am. and 12:00 Noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within five (5) days after you have served the plaintiff If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

*Clerk of the Court*

| | |
|---|---|
| Andrew H. Marks | |
| Name of Plaintiff's Attorney | By_____ |
| 1001 Pennsylvania Avenue, NW | Deputy Clerk |
| Address | |
| Washington, DC 20004 | |
| (202) 624-2920 | Date February 1, 2006 |
| Telephone | |

PUEDE OBTENERSE COPIAS DE ESTE FORMULARIO EN ESPANOL EN EL TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA, 500 INDIANA AVENUE, N.W., SALA JM 170

YOU MAY OBTAIN A COPY OF THIS FORM IN SPANISH AT THE SUPERIOR COURT OF D.C., 500 INDIANA AVENUE, N.W., ROOM JM 170

Form CV(6)-456/Mar. 93     NOTE: SEE IMPORTANT INFORMATION ON BACK OF THIS FORM.

IMPORTANT: IF YOU FAIL TO SERVE AND FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, DO NOT *FAIL TO ANSWER WITHIN THE REQUIRED TIME*

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (628-1 161) or the Neighborhood Legal Services (682-2700) for help or come to Room JM 170 at 500 Indiana Avenue, N.W., for more information concerning where you may ask for such help.

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## THE CIVIL DIVISION



AVUE TECHNOLOGIES CORPORATION
1142 Broadway Plaza, Suite 400
Tacoma, WA 98402

              Petitioner,

      v.

DCI GROUP, L.L.C.,
d/b/a DCI Associates
1828 L Street, NW
Suite 400
Washington, DC 20036,

              Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

06—0000637

Case No. _____

RECEIVED
Civil Clerk's Office
FEB 0 1 2006
Superior Court of the
District of Columbia
Washington, D.C.

### PETITIONER'S MOTION TO STAY ARBITRATION PROCEEDING

      Pursuant to D.C. Code Ann. § 16-4302, Petitioner Avue Technologies Corp. ("Avue")

seeks an order to stay an arbitration proceeding initiated by Respondent DCI Group, L.L.C.

("DCI") under the auspices of the American Arbitration Association ("AAA"). This motion is

brought pursuant to D.C. Code Ann. § 16-4315 and SCR-Civ. 70-I. As set forth more fully in

the attached Memorandum of Points and Authorities, Avue did not consent to arbitrate disputes

arising out of the sponsorship of Tech Central Station ("TCS"); therefore, Avue respectfully

requests that this Court stay the pending arbitration proceeding with respect to the claims arising

out of that sponsorship. In addition, Petitioner respectfully requests that this Court order

Respondent to pay Petitioner's costs associated with this proceeding.

As required by SCR-Civ. 70-I, Petitioner has attached a Proposed Order. In accordance

with SCR-Civ. 12-I, Petitioner has notified Respondent of its intent to file this Motion.

Respondent does not consent to the relief sought by the Petitioner.


Respectfully submitted,


Andrew H. Marks, D.C. Bar # 932269
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2920

Counsel for Avue Technologies Corp.


Dated: February 1, 2006

## CERTIFICATE OF SERVICE

In accordance with SCR-Civ. 4, I HEREBY CERTIFY that a true and correct copy of the

foregoing Petitioner's Motion to Stay Arbitration Proceeding, as well as the accompanying

Memorandum of Points and Authorities and the Proposed Order, was served on this 1st day of

February, 2006 via certified mail, return receipt requested, upon:


DCI GROUP, L.L.C.,
1828 L Street, NW
Suite 400
Washington, DC 20036,

With a copy to:

Henry M. Stein, Esq.
Stein and Stein PC
2826 South Carriage Lane
Suite 100
Mesa, AZ 85202

Counsel for DCI Group, L.L.C.


Andrew H. Marks

3

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
THE CIVIL DIVISION

|  |  |
|---|---|
| AVUE TECHNOLOGIES CORPORATION<br>1142 Broadway Plaza, Suite 400<br>Tacoma, WA 98402<br><br>            Petitioner,<br><br>    v.<br><br>DCI GROUP, L.L.C.,<br>d/b/a DCI Associates<br>1828 L Street, NW<br>Suite 400<br>Washington, DC 20036,<br><br>            Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. _____ |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITIONER'S MOTION TO STAY ARBITRATION PROCEEDING**

**INTRODUCTION**

Petitioner Avue Technologies ("Avue") seeks an order to stay an arbitration proceeding initiated by Respondent DCI Group, L.L.C. ("DCI") under the auspices of the American Arbitration Association ("AAA"). The ground for the requested stay, as set forth herein, is that Respondent has included within the Statement of Claims filed with the AAA claims that the parties did not agree to submit to arbitration. Because there is no agreement to arbitrate the claims at issue, these claims are not arbitrable and Petitioner is entitled to an order staying arbitration of those non-arbitrable claims.

1

## JURISDICTION

1.    Jurisdiction of this Court is proper under D.C. Code Ann. § 11-921.

2.    Respondent DCI maintains an office and conducts business in the District of Columbia. The parties discussed the Tech Central Station sponsorship in the District of Columbia, and the contract was to be performed in the District of Columbia. Based on Respondent's presence in the District of Columbia and pursuant to D.C. Code Ann. § 13-423, this Court may properly exercise personal jurisdiction over Respondent DCI.

## PARTIES

3.    Petitioner is a Delaware corporation that has its principal place of business in the State of Washington. Among other things, Avue provides technology-based solutions to U.S. Government agencies to assist with job evaluation and classification, compensation, staffing and recruitment, performance management and optimization, management-employee relations, labor relations, and compliance with civil rights laws and regulations.

4.    On information and belief, Respondent is an Arizona limited liability company having its principal place of business in Arizona. Among other things, DCI lobbies on behalf of clients before Congress and the Executive Branch in the areas of federal appropriations, taxes, trade, health care, financial services, technology, energy, natural resources, communications, and homeland security.

## ALLEGATIONS OF FACT

### *The Consulting Agreement*

5.    On March 9, 2004, Avue and DCI entered into a written agreement ("the Consulting Agreement") with an effective date of December 1, 2003. A copy of the Consulting Agreement is attached as Exhibit A.

6.     Pursuant to the Consulting Agreement, Avue retained DCI to provide strategic counseling and government affairs representation with respect to specific legislative and administrative initiatives.

7.     The Consulting Agreement is limited in scope and provides, *inter alia*, that it may only "be modified or amended by a written agreement signed by both parties" and that "[a]ny modification of this Agreement will be effective only if it is in writing signed by the parties hereto." Additionally, the Consulting Agreement expressly states that it "constitutes the entire Agreement between the parties."

8.     The Consulting Agreement provides that "[a]ny claim, dispute, controversy, or other matter in question with regard to this Agreement shall exclusively be subject to final binding arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association (AAA)."

### *The TCS Sponsorship*

9.     In or about December 2003, Avue and DCI reached an oral understanding with respect to Avue's sponsorship of Tech Central Station ("TCS"), an affiliate of DCI. TCS is an online daily publication focusing on science, technology, and politics. The goal of the TCS sponsorship was to generate favorable publicity about Avue's products and services and to fund the creation of positive "news" stories that purported to be the work of independent journalists. This type of "news" creation is sometimes referred to as "journo-lobbying."

10.     The TCS sponsorship was not included within the scope of the Consulting Agreement. At no time did Avue and DCI agree to amend the Consulting Agreement to include the TCS sponsorship within the scope of the Consulting Agreement, and there is no signed document that purports to amend or modify the Consulting Agreement to include within its scope

any aspect of the parties' agreement relating to the TCS sponsorship. Indeed, on information and belief, there is no writing of any kind that sets forth the terms of the parties' agreement concerning the TCS sponsorship.

11.     At no time did Avue and DCI discuss, much less agree, to submit disputes arising from or relating to the TCS sponsorship to arbitration under the auspices of the AAA or under any other set of rules.

### *DCI's Demand for Arbitration*

12.     On November 28, 2005, DCI initiated arbitration proceedings against Avue before the AAA. DCI's arbitration demand, set forth in its Statement of Claims, is attached hereto as Exhibit B.

13.     In its Statement of Claims, DCI seeks to submit two disputes to binding arbitration. First, DCI demands that an arbitration panel, convened by the AAA, hear and resolve its claim for payments it alleges are due and owing for the government relations services it undertook under the Consulting Agreement. Second, DCI demands that an arbitration panel also hear and resolve its claim for payments it alleges are due and owing from Avue for the TCS sponsorship.

14.     DCI's Statement of Claims asks the panel to award it in excess of $565,500 plus interest. Although the Statement of Claims does not differentiate between the amounts DCI alleges to be due between the amounts at issue under the Consulting Agreement and the amounts at issue under the TCS sponsorship agreement, on information and belief, a substantial amount of the sum that DCI alleges is owed by Avue relates to the TCS sponsorship agreement rather than the Consulting Agreement.

15.     In the Answering Statement and Counterclaims it filed with the AAA (attached hereto as Exhibit C), Avue objected to arbitration of DCI's claims relating to the TCS sponsorship. In

addition, Avue's counterclaim alleged deficiencies associated with services provided pursuant to both the Consulting Agreement and the TCS sponsorship.

16.    Avue does not dispute that DCI's claims relating to the government relations services provided under the Consulting Agreement are subject to arbitration under the auspices of the AAA. That is because the parties included an arbitration provision in the Consulting Agreement that specifically applies to the claims asserted by DCI under the Consulting Agreement.

17.    There is no comparable agreement between Avue and DCI with respect to disputes relating to the TCS sponsorship. Quite simply, the parties never agreed to submit such TCS-related disputes to arbitration. Accordingly, in its response to DCI's arbitration demand, Avue objected to arbitration of the TCS-related disputes and asserted a challenge to the jurisdiction of the AAA or any appointed arbitrators over such claims.

**ARGUMENT**

18.    Arbitration is a creature of contract. In the absence of an arbitration agreement, no party can be forced to have its disputes resolved by an arbitration panel. "[A]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes – *but only those disputes* – that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis added).

19.    The Uniform Arbitration Act, adopted by the Council of the District of Columbia, provides in pertinent part: "On application, the Court may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate. Such an issue, when in substantial and bona fide dispute, shall be forthwith and summarily tried and the stay ordered if found for the moving party." D.C. Code Ann. § 16-4302.

20.    Because there was no agreement between Avue and DCI to arbitrate claims arising out of the TCS sponsorship, Petitioner Avue is entitled to an order staying the arbitration with respect to the dispute arising out of the TCS sponsorship.

21.    In addition, Petitioner respectfully requests that this Court order Respondent to pay Petitioner's costs associated with this proceeding and that this Court award such other and further relief as may be deemed just and appropriate.

Respectfully submitted,

Andrew H. Marks, D.C. Bar # 932269
Crowell & Moring LLP
1001 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 624-2920

Counsel for Avue Technologies Corp.

Dated:  February 1, 2006

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
THE CIVIL DIVISION

AVUE TECHNOLOGIES CORPORATION          )
1142 Broadway Plaza, Suite 400         )
Tacoma, WA 98402                       )
                                       )
                    Petitioner,        )
                                       )
            v.                         )          Case No. _____
                                       )
DCI GROUP, L.L.C.,                     )
d/b/a DCI Associates                   )
1828 L Street, NW                      )
Suite 400                              )
Washington, DC 20036,                  )
                                       )
                    Respondent.        )
                                       )

## PROPOSED ORDER

Upon consideration of Petitioner's Motion to Stay Arbitration Proceeding, and any

opposition thereto, it is, this __ day of _____ 2006, hereby

ORDERED, that the Motion to Stay Arbitration Proceeding be, and the same hereby, is

GRANTED; and it is further

ORDERED, that the pending arbitration between Petitioner and Respondent, American

Arbitration Case No. 76 181 Y 00340 05 CALC, is hereby stayed with respect to all claims

relating to the parties' agreement with respect to the Tech Central Station sponsorship; and it is

further

1

ORDERED, that DCI be, and hereby is, enjoined from pursuing arbitration of its claims relating to the parties' agreement with respect to the Tech Central Station sponsorship; and it is further

ORDERED, that Respondent shall pay Petitioner the costs of this proceeding.

_____
Judge
Superior Court of the District of Columbia

2

# Avue
# Exhibit A

## Consulting Agreement

December 1; 2003

Mr. Doug Davenport
DCI Associates – a division of DCI Group, L.L.C.
1133 21ˢᵗ Street, NW,
Suite M100
Washington, D.C. 20036

Dear Doug:

This will serve to confirm our mutual understanding and agreement that DCI Associates– a division of DCI Group, L.L.C., (hereinafter referred to as "Consultant") will be engaged to serve as a consultant to AVUE Technologies Corporation (hereinafter referred to as "Client").

Section 1
Duties:

Consultant will assist and advise Client with respect to agreed-upon legislative and administrative initiatives. Consultant shall act solely as an independent contractor, not as an employee or agent of Client. Accordingly, Client will not exercise control over the manner, time, or place in which any services rendered by Consultant or its members, officers, agents, and employees are performed. Unless specifically authorized in writing, Consultant agrees not to enter into any agreement on behalf of Client and agrees that it shall not represent to any third party that it has authority to enter into any such agreement. Additionally, Consultant understands that it will not be eligible for any Client employment benefits currently provided to employees of Client.

Section 2
Compliance with Applicable Laws and Regulations:

Subject to the foregoing, all services rendered by Consultant in the term of this engagement will be rendered in accordance with all applicable federal and state laws and regulations, including, without limitation, the Federal Election Campaign Act of 1971, as amended, the Gift Rules Guidelines of the United States Senate and House of Representatives, the Standards of Ethical Conduct of Employees of the Executive Branch, and the Lobbying Disclosure Act of 1995, as amended.

Section 3
Term of Agreement:

This Consulting Agreement will become effective on December 1, 2003 and shall terminate according to the paragraph immediately following.

This Consulting Agreement may be terminated by either party upon sixty days written notice. If either party terminates this Agreement upon sixty days written notice, Consultant will receive compensation through the end of the 60-day period, or the agreed-upon termination date, whichever is later.

Section 4
Compensation:

Consultant will charge a monthly retainer fee of $20,000, paid monthly, plus all reasonable out-of-pocket expenses, including travel-related expenses. Consultant shall submit the monthly invoice on or about the 15th of the month for which services are performed. Consultant shall submit invoices for out-of-pocket expenses on a monthly basis. Invoices shall be due upon receipt.

Section 5
Confidentiality:

From time to time, Client may share with Consultant non-public or proprietary information related to Client business in order to assist Consultant in performing the services outlined in this Agreement. All such information, whether provided orally or in writing, shall be considered confidential. Consultant agrees not to disclose any such information to any person not an employee or agent of Consultant without the prior written consent of Client and to provide prompt notice to Client of any judicial or quasi-judicial demand for such information.

Likewise, the Client may become aware of information about Consultant, its business operations, and its methods of performance that may be highly confidential and proprietary to Consultant, and which is generally not known to the general public or in the business which Consultant and its other clients are engaged. Client will treat all such information as confidential, unless such information is in the public domain. Client agrees not to disclose any such information to any person not an employee or agent of Client without the prior written consent of Consultant and to provide prompt notice to Consultant of any judicial or quasi-judicial demand for such information. The duty to maintain the confidentiality of all such non-public information shall continue during the term of this Agreement and for a period of three years after it expires.

Section 6
Performance of Services:

Consultant agrees to commit its best efforts to the fulfillment of the terms of this Agreement. Consultant's duties and obligations under this Agreement are material and a breach of any of them shall

be grounds for immediate termination of this Agreement for specific performance. Consultant's duties and obligations under this Agreement are not assignable without Client's prior written agreement.

The terms of this Agreement shall be considered confidential, and may not be disclosed to any third party without the express written agreement of Client, subject, however, to Consultant's obligations to file reports as required by law with any governmental entity. This Agreement contains the entire understanding between the parties regarding this consulting relationship, and there are no other agreements, oral or written. This Agreement may be modified or amended only by a written amendment signed by both parties. Your signature below will indicate your understanding of, and concurrence with, all the terms and conditions of this Agreement.

## Section 7
## Entire Agreement:

This Consulting Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof, and supercedes any and all agreements, negotiations, communications, writings, and understandings, either oral or written, between the parties hereto with respect to the rendering of Services by Consultant for Client and contains all of the covenants and agreements between the parties with respect to the rendering of such services in any manner whatsoever. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the parties hereto.

## Section 8
## Miscellaneous:

(a)     This Agreement may not be assigned by either party by agreement or operation of law without the written consent of the other party. Nothing in this Agreement, express or implied, is intended to or shall (i) confer on any person other than the parties hereto, or their permitted successors or assigns, any rights to remedies under or by reason of this Agreement; (ii) constitute the parties hereto partners or participants in a joint venture; or (iii) appoint one party the agent of the other.

(b)     This Agreement shall be deemed to have been made in the State of Arizona, and shall be construed and enforced in accordance with the law of the State of Arizona, without reference to principles of conflicts of laws thereof.

(c)     Any claim, dispute, controversy or other matter in question with regard to this Agreement shall exclusively be subject to final binding arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association (AAA). The parties shall not submit claims for punitive damages, and do hereby waive any right to the same, and the arbitrators shall not be authorized to award punitive

damages.   The parties or the arbitrators, as appropriate, shall undertake the duties of the AAA under the AAA rules.  All arbitrations shall be conducted in the State of Arizona.

(d)   This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and such counterparts together shall constitute but one and the same instrument.

(e)   This Agreement shall not be binding upon Client or Consultant unless executed on its behalf by a duly authorized Officer or Member.  Client and Consultant, and the individuals executing this Agreement represent such individuals have been and are duly authorized by all necessary and appropriate corporate or other action to execute same on behalf of Client and Consultant, respectively.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized Officers and/or Members.

By: _____
Linda Brooks
Co-Chief Executive Officer
AVUE Technologies Corporation
1142 Broadway Plaza, Suite 400
Tacoma, WA 98402

Dated: 3|9|04

By: _____
James D. Miller
Co-Chief Executive Officer
AVUE Technologies Corporation
1142 Broadway Plaza, Suite 400
Tacoma, WA 98402

Dated: 3|4|04

Concurrence:

DCI Group, L.L.C., and its
DCI Associates division

By: _____   Dated: 3/9/04
Tim Hyde
A Managing Member

# Avue
# Exhibit B



# STEIN AND STEIN, P.C.

ATTORNEYS AT LAW
2826 SOUTH CARRIAGE LANE
SUITE 100
MESA, ARIZONA 85202-7801

TELEPHONE  (480) 820-1421
FACSIMILE  (480) 820-0667

HENRY M. STEIN
MARIA P. STEIN

November 28, 2005

CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Avue Technologies Corporation
1145 Broadway Plaza, Suite 800
Tacoma, Washington  98402

     RE:  DCI GROUP, L.L.C. vs. AVUE TECHNOLOGIES CORPORATION,
            AMERICAN ARBITRATION ASSOCIATION CASE NUMBER TO BE
            ASSIGNED

Dear Sir/Madam:

     This firm represents DCI Group, L.L.C. ("DCI").

     Today, we have initiated an arbitration proceeding under the auspices of the American Arbitration Association ("AAA") in accordance with the December 1, 2003, contract between DCI and Avue Technologies Corporation ("Avue").  I am therefore enclosing the following items:

    1.    Demand for Arbitration;
    2.    Statement of Claims;
    3.    Excerpt of Contract providing for Arbitration; and
    4.    Confirmation of online filing with the American Arbitration Association.

     I also enclose a letter I have sent to the AAA transmitting hard copies of the foregoing.

     Finally, please note Rule 4(b) of the American Arbitration Association's Commercial Arbitration Rules provides for a fifteen (15) day period for filing of a response to the Statement of Claims.

                             Very truly yours,

                             STEIN and STEIN, P.C.
                             Attorneys-at-Law

                             Henry M. Stein

HMS:sc
Enclosures as noted
cc: DCI Group, L.L.C.

 **American Arbitration Association**
*Dispute Resolution Services Worldwide*

COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION

*MEDIATION: If you would like the AAA to contact the other parties and attempt to arrange a mediation, please check this box. ☐ There is no additional administrative fee for this service.*

| Name of Respondent<br>AVUE TECHNOLOGIES CORPORATION | Name of Representative (if known)<br>Not Known |
|---|---|
| Address<br>1145 Broadway Plaza, Suite 600 | Name of Firm (if applicable) |
| | Representative's Address |

| City<br>Tacoma | State<br>WA | Zip Code<br>98402- | City | State | Zip Code |
|---|---|---|---|---|---|
| Phone No.<br>253-573-1877 | | Fax No.<br>253-572-1192 | Phone No. | | Fax No. |
| Email Address:<br>CEO@avuetech.com | | | Email Address: | | |

The named claimant, a party to an arbitration agreement dated December 1, 2003 _____, which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration.

THE NATURE OF THE DISPUTE

BREACH OF CONTRACT - SEE STATEMENT OF CLAIMS ATTACHED HERETO AS EXHIBIT "A" AND INCOPORATED HEREIN BY THIS REFERENCE

| Dollar Amount of Claim $565,501.51 | Other Relief Sought: ☒ Attorneys Fees  ☒ Interest<br>☒ Arbitration Costs  ☐ Punitive/Exemplary  ☐ Other |
|---|---|

AMOUNT OF FILING FEE ENCLOSED WITH THIS DEMAND (please refer to the fee schedule in the rules for the appropriate fee) $6,000.00

PLEASE DESCRIBE APPROPRIATE QUALIFICATIONS FOR ARBITRATOR(S) TO BE APPOINTED TO HEAR THIS DISPUTE:
Attorney having expertise in commercial disputes.

Hearing locale Arizona _____ (check one) ☐ Requested by Claimant  ☒ Locale provision included in the contract

| Estimated time needed for hearings overall:<br>_____ hours or 3 _____ days | Type of Business: Claimant ___ Consulting Services ___<br>Respondent Software |
|---|---|

Is this a dispute between a business and a consumer? ☐Yes ☒No  Does this dispute arise out of an employment relationship? ☐ Yes ☒ No

If this dispute arises out of an employment relationship, what was/is the employee's annual wage range? Note: This question is required by California law. ☐Less than $100,000 ☐ $100,000 - $250,000 ☐ Over $250,000

You are hereby notified that copies of our arbitration agreement and this demand are being filed with the American Arbitration Association's Case Management Center, located in (check one) ☐ Atlanta, GA  ☐Dallas, TX  ☐ East Providence, RI ☒ Fresno, CA  ☐ International Centre, NY, with a request that it commence administration of the arbitration. Under the rules, you may file an answering statement within fifteen days after notice from the AAA.

| Signature (may be signed by a representative)  Date: | Name of Representative<br>Henry M. Stein, Esq. |
|---|---|
| Name of Claimant<br>DCI Group, L.L.C. | Name of Firm (if applicable)<br>Stein and Stein, P.C. |
| Address (to be used in connection with this case)<br>1828 L Street N.W., Suite 400 | Representative's Address<br>2828 South Carriage Lane, Suite 100 |

| City<br>Washington | State<br>DC | Zip Code<br>20036- | City<br>Mesa | State<br>AZ | Zip Code<br>85202- |
|---|---|---|---|---|---|
| Phone No.<br>202-508-4242 | | Fax No.<br>202-546-4243 | Phone No.<br>480-820-1421 | | Fax No.<br>480-820-0667 |
| Email Address: | | | Email Address:<br>HMStein@azsteinlaw.com | | |

To begin proceedings, please send two copies of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to the AAA. Send the original Demand to the Respondent.

Please visit our website at www.adr.org if you would like to file this case online. AAA Customer Service can be reached at 800-778-7879

EXHIBIT "A"

Henry M. Stein, Esq.
State Bar No. 009314
STEIN and STEIN, P.C.
2826 South Carriage Lane
Suite 100
Mesa, Arizona  85202
(480) 820-1421

Attorneys for Claimant

IN PROCEEDINGS BEFORE THE AMERICAN ARBITRATION ASSOCIATION

| | | |
|---|---|---|
| DCI GROUP, L.L.C., an Arizona limited liability company, d/b/a DCI ASSOCIATES, | ) ) ) ) | CASE NO. |
| Claimant, | ) ) | STATEMENT OF CLAIMS |
| vs. | ) ) ) | THREE-PERSON PANEL REQUESTED |
| AVUE TECHNOLOGY CORPORATION, a Delaware corporation, | ) ) ) | |
| Respondent. | ) ) | |

Claimant DCI GROUP, L.L.C., an Arizona limited liability company, doing business as DCI ASSOCIATES ("DCI"), by and through its undersigned counsel, hereby complains and alleges as follows:

1.    DCI is an Arizona limited liability company conducting business in Arizona and elsewhere.

2.    Respondent AVUE TECHNOLOGY CORPORATION ("Avue") is a Delaware corporation conducting business in the state of Washington and elsewhere.

3.    DCI and Avue entered into a Consulting Agreement on or about March 9, 2004, with an effective date of December 1, 2003 (the "Agreement"), a copy of which is attached as Exhibit "A" hereto and incorporated herein by this reference.

STEIN AND STEIN, P.C.
2826 SOUTH CARRIAGE LANE
SUITE 100
MESA, ARIZONA 85202
(480) 820-1421

4.     Pursuant to Section 8(c) of the Agreement, all disputes arising out of the Agreement shall be resolved by binding arbitration in accordance with the American Arbitration Association's commercial arbitration rules. Further, the parties agreed the arbitration shall occur within the state of Arizona and that Arizona law shall apply and govern.

5.     The Claims set forth herein are subject to arbitration within the meaning and scope of Section 8(c) of the Agreement.

6.     Claimant hereby demands arbitration of all claims set forth herein under the auspices of the American Arbitration Association in accordance with the commercial arbitration rules. Claimant further demands the arbitration be held within the state of Arizona and requests the American Arbitration Association schedule all proceedings in the Phoenix, Arizona, metropolitan area.

7.     Pursuant to the Agreement, Claimant rendered consultancy services for and on behalf of Respondent.

8.     Pursuant to the Agreement, Respondent was to pay to Claimant a monthly fee of Twenty Thousand Dollars ($20,000.00), plus additional out-of-pocket expenses and travel-related expenses.

9.     In or about December 2003, the parties agreed to modify the Agreement by increasing the scope of services to be rendered by Claimant for and on behalf of Respondent. The parties further agreed to increase the monthly compensation payable by Respondent

STEIN AND STEIN, P.C.
2926 SOUTH CARRIAGE LANE
SUITE 100
MESA, ARIZONA 85202
(480) 890-1297

-2-

to Claimant from Twenty Thousand Dollars ($20,000.00) to Forty Thousand Dollars ($40,000.00).

10. Claimant fully performed its duties under the Agreement.

11. After applying all payments and just setoffs, Respondent has failed and neglected to pay to Claimant the total principal sum of Five Hundred Sixty-Five Thousand Five Hundred One Dollars and Fifty-One Cents ($565,501.51) as of the October 1, 2005, billing. A copy of Claimant's account analysis, reflecting payments and credits, is attached hereto as Exhibit "B".

12. Respondent has breached the Agreement by failing to make payment as set forth in the preceding paragraph.

13. In addition to the sum set forth in paragraph 11, Respondent owes Claimant interest, at the statutory rate, commencing from the date of all unpaid invoices through date of payment.

14. Claimant has been damaged by Respondent's breach of contract in amounts to be proven at the time of hearing but, in no event, not less than Five Hundred Sixty-Five Thousand Five Hundred One Dollars and Fifty-One Cents ($565,501.51), plus interest.

15. In addition to the foregoing, the services rendered by Claimant and received by Respondent were for the Respondent's use and benefit. As alleged hereinabove, Claimant has not been fully compensated for the benefit it conferred upon the Respondent.

16. In the event the Respondent is not required to pay Claimant for the services it received, Respondent will be unjustly enriched in amounts to be proven at the time of hearing.

-3-

STEIN AND STEIN, P.C.
2826 SOUTH CARRIAGE LANE
SUITE 100
MESA, ARIZONA 85202
(440) 820-1431

17. Claimant requests an award of its attorney's fees.

18. Pursuant to R-15 of the Commercial Arbitration Rules, the Claimant requests the appointment of a three-person arbitration panel.

WHEREFORE, Claimant respectfully requests the following relief:

1. For money damages in an amount to be determined at the time of hearing in an amount not less than Five Hundred Sixty-Five Thousand Five Hundred One Dollars and Fifty-One Cents ($565,501.51);

2. For interest at the statutory rate commencing from the date of invoice until paid;

3. For attorney's fees;

4. For all other fees and expenses advanced by Claimant in connection with this proceeding including, without limitation, all filing fees, administrative fees, arbitrator's fees, witness fees, expert fees (if any), and any other arbitration fees; and

5. For such other or further relief as may be appropriate.

RESPECTFULLY SUBMITTED this 28th day of November, 2005.

                              STEIN and STEIN, P.C.
                              Attorneys at Law


                              By: _____
                                  Henry M. Stein, Attorney
                                  for Claimant

EXHIBIT "A"

*Consulting Agreement*

December 1, 2003

Mr. Doug Davenport
DCI Associates – a division of DCI Group, L.L.C.
1133 21st Street, NW,
Suite M100
Washington, D.C. 20036

Dear Doug:

     This will serve to confirm our mutual understanding and agreement that DCI Associates– a division of DCI Group, L.L.C., (hereinafter referred to as "Consultant") will be engaged to serve as a consultant to AVUE Technologies Corporation (hereinafter referred to as "Client").

Section 1
Duties:

     Consultant will assist and advise Client with respect to agreed-upon legislative and administrative initiatives.  Consultant shall act solely as an independent contractor, not as an employee or agent of Client.  Accordingly, Client will not exercise control over the manner, time, or place in which any services rendered by Consultant or its members, officers, agents, and employees are performed.  Unless specifically authorized in writing, Consultant agrees not to enter into any agreement on behalf of Client and agrees that it shall not represent to any third party that it has authority to enter into any such agreement.  Additionally, Consultant understands that it will not be eligible for any Client employment benefits currently provided to employees of Client.

Section 2
Compliance with Applicable Laws and Regulations:

     Subject to the foregoing, all services rendered by Consultant in the term of this engagement will be rendered in accordance with all applicable federal and state laws and regulations, including, without limitation, the Federal Election Campaign Act of 1971, as amended, the Gift Rules Guidelines of the United States Senate and House of Representatives, the Standards of Ethical Conduct of Employees of the Executive Branch, and the Lobbying Disclosure Act of 1995, as amended.

Section 3
Term of Agreement:

    This Consulting Agreement will become effective on December 1, 2003 and shall terminate according to the paragraph immediately following.

    This Consulting Agreement may be terminated by either party upon sixty days written notice. If either party terminates this Agreement upon sixty days' written notice, Consultant will receive compensation through the end of the 60-day period, or the agreed-upon termination date, whichever is later.

Section 4
Compensation:

    Consultant will charge a monthly retainer fee of $20,000, paid monthly, plus all reasonable out-of-pocket expenses, including travel-related expenses. Consultant shall submit the monthly invoice on or about the 15th of the month for which services are performed. Consultant shall submit invoices for out-of-pocket expenses on a monthly basis. Invoices shall be due upon receipt.

Section 5
Confidentiality:

    From time to time, Client may share with Consultant non-public or proprietary information related to Client business in order to assist Consultant in performing the services outlined in this Agreement. All such information, whether provided orally or in writing, shall be considered confidential. Consultant agrees not to disclose any such information to any person not an employee or agent of Consultant without the prior written consent of Client and to provide prompt notice to Client of any judicial or quasi-judicial demand for such information.

    Likewise, the Client may become aware of information about Consultant, its business operations, and its methods of performance that may be highly confidential and proprietary to Consultant, and which is generally not known to the general public or in the business which Consultant and its other clients are engaged. Client will treat all such information as confidential, unless such information is in the public domain. Client agrees not to disclose any such information to any person not an employee or agent of Client without the prior written consent of Consultant and to provide prompt notice to Consultant of any judicial or quasi-judicial demand for such information. The duty to maintain the confidentiality of all such non-public information shall continue during the term of this Agreement and for a period of three years after it expires.

Section 6
Performance of Services:

    Consultant agrees to commit its best efforts to the fulfillment of the terms of this Agreement. Consultant's duties and obligations under this Agreement are material and a breach of any of them shall

be grounds for immediate termination of this Agreement for specific performance. Consultant's duties and obligations under this Agreement are not assignable without Client's prior written agreement.

The terms of this Agreement shall be considered confidential, and may not be disclosed to any third party without the express written agreement of Client, subject, however, to Consultant's obligations to file reports as required by law with any governmental entity. This Agreement contains the entire understanding between the parties regarding this consulting relationship, and there are no other agreements, oral or written. This Agreement may be modified or amended only by a written amendment signed by both parties. Your signature below will indicate your understanding of, and concurrence with, all the terms and conditions of this Agreement.

Section 7
Entire Agreement:

This Consulting Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof, and supercedes any and all agreements, negotiations, communications, writings, and understandings, either oral or written, between the parties hereto with respect to the rendering of Services by Consultant for Client and contains all of the covenants and agreements between the parties with respect to the rendering of such services in any manner whatsoever. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the parties hereto.

Section 8
Miscellaneous:

(a)     This Agreement may not be assigned by either party by agreement or operation of law without the written consent of the other party. Nothing in this Agreement, express or implied, is intended to or shall (i) confer on any person other than the parties hereto, or their permitted successors or assigns, any rights to remedies under or by reason of this Agreement; (ii) constitute the parties hereto partners or participants in a joint venture; or (iii) appoint one party the agent of the other.

(b)     This Agreement shall be deemed to have been made in the State of Arizona, and shall be construed and enforced in accordance with the law of the State of Arizona, without reference to principles of conflicts of laws thereof.

(c)     Any claim, dispute, controversy or other matter in question with regard to this Agreement shall exclusively be subject to final binding arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association (AAA). The parties shall not submit claims for punitive damages, and do hereby waive any right to the same, and the arbitrators shall not be authorized to award punitive

damages. The parties or the arbitrators, as appropriate, shall undertake the duties of the AAA under the AAA rules. All arbitrations shall be conducted in the State of Arizona.

(d)     This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and such counterparts together shall constitute but one and the same instrument.

(e)     This Agreement shall not be binding upon Client or Consultant unless executed on its behalf by a duly authorized Officer or Member. Client and Consultant, and the individuals executing this Agreement represent such individuals have been and are duly authorized by all necessary and appropriate corporate or other action to execute same on behalf of Client and Consultant, respectively.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized Officers and/or Members.

By: _____            By: _____
Linda Brooks                                           James D. Miller
Co-Chief Executive Officer                    Co-Chief Executive Officer
AYUB Technologies Corporation        AYUB Technologies Corporation
1142 Broadway Plaza, Suite 400         1142 Broadway Plaza, Suite 400
Tacoma, WA 98402                              Tacoma, WA 98402

Dated: 3 | 9 | 04                                    Dated: 3 | 9 | 04

Concurrence:

DCI Group, L.L.C., and its
DCI Associates division

By: _____  Dated: 3/9/04
Tim Hyde
A Managing Member

EXHIBIT "B"

## DCI Group, L.L.C.
## Account Analysis - Avue

| Invoice/Check# | Date | Transaction Type | Accounting Period | Amount | Inv. Bal. |
|---|---|---|---|---|---|
| 000681 | 6/30/2004 | Invoice | 06-03 | 40,000.00 | |
| 12216 | 8/22/2003 | Invoice | 08-03 | (40,000.00) | |
| 000918 | 7/31/2003 | Payment | 07-03 | 20,000.00 | |
| 12276 | 9/9/2003 | Payment | 09-03 | (20,000.00) | |
| 000697 | 8/31/2003 | Invoice | 08-03 | 20,887.12 | |
| 12353 | 10/9/2003 | Payment | 10-03 | (20,000.00) | |
| 13091 | 8/30/2004 | Payment | 08-04 | (887.12) | |
| 001213 | 9/30/2003 | Invoice | 09-03 | 20,093.00 | |
| 12487 | 11/18/2003 | Payment | 11-03 | (20,000.00) | |
| 13091 | 8/30/2004 | Payment | 08-04 | (93.00) | |
| 001507 | 10/31/2003 | Invoice | 10-03 | 20,141.00 | |
| 12612 | 1/20/2004 | Payment | 01-04 | (20,000.00) | |
| 13091 | 8/30/2004 | Payment | 08-04 | (141.00) | |
| 001719 | 11/21/2003 | Invoice | 11-03 | 20,000.00 | |
| 12612 | 1/20/2004 | Payment | 01-04 | (20,000.00) | |
| 002101 | 12/31/2003 | Invoice | 12-03 | 40,529.83 | |
| 12691 | 2/9/2004 | Payment | 02-04 | (20,000.00) | |
| 12691 | 2/9/2004 | RA | 02-04 | 20,000.00 | |
| 12789 | 3/18/2004 | Payment | 03-04 | (40,529.83) | |
| 002346 | 1/31/2004 | Invoice | 01-04 | 40,143.38 | |
| 12941 | 5/10/2004 | Payment | 05-04 | (40,143.38) | |
| 002357 | 1/31/2004 | Invoice | 01-04 | 20,000.00 | |
| 12691 | 2/9/2004 | Payment | 02-04 | (20,000.00) | |
| 002410 | 2/25/2004 | Invoice | 02-04 | 40,000.00 | |
| 13091 | 8/30/2004 | Payment | 08-04 | (40,000.00) | |
| 002598 | 3/17/2004 | Invoice | 03-04 | 40,828.74 | |
| 13091 | 8/30/2004 | Payment | 08-04 | (40,828.74) | |
| 002847 | 4/26/2004 | Invoice | 04-04 | 40,000.00 | |
| 13091 | 8/30/2004 | Payment | 08-04 | (40,000.00) | |
| 003072 | 5/26/2004 | Invoice | 05-04 | 40,012.00 | |
| 13091 | 8/30/2004 | Payment | 08-04 | (40,012.00) | |
| 003354 | 6/25/2004 | Invoice | 06-04 | 40,081.20 | |
| 13300 | 12/2/2004 | Payment | 12-04 | (40,081.20) | |

| Invoice | Date | Type | Period | Amount | Balance |
|---|---|---|---|---|---|
| 003428 | 7/1/2004 | Invoice | 07-04 | 40,174.61 | |
| 13300 | 12/2/2004 | Payment | 12-04 | (40,174.61) | |
| 003600 | 8/1/2004 | Invoice | 08-04 | 40,000.00 | |
| 13300 | 12/2/2004 | Payment | 12-04 | (40,000.00) | |
| 003801 | 9/1/2004 | Invoice | 09-04 | 40,000.00 | 40,000.00 |
| 004033 | 10/1/2004 | Invoice | 10-04 | 40,000.00 | 40,000.00 |
| 004290 | 11/1/2004 | Invoice | 11-04 | 40,501.61 | 40,501.61 |
| 004521 | 12/1/2004 | Invoice | 12-04 | 40,523.18 | 40,523.18 |
| 004812 | 1/1/2005 | Invoice | 01-05 | 40,610.41 | 40,610.41 |
| 004959 | 2/2/2005 | Invoice | 02-05 | 40,435.30 | 40,435.30 |
| 005141 | 3/1/2005 | Invoice | 03-05 | 40,597.27 | 40,597.27 |
| 005375 | 4/1/2005 | Invoice | 04-05 | 40,057.18 | 40,057.18 |
| 005624 | 5/1/2005 | Invoice | 05-05 | 42,305.29 | 42,305.29 |
| 006046 | 6/1/2005 | Invoice | 06-05 | 40,134.42 | 40,134.42 |
| 006091 | 7/1/2005 | Invoice | 07-05 | 40,014.00 | 40,014.00 |
| 006297 | 8/1/2005 | Invoice | 08-05 | 40,000.00 | 40,000.00 |
| 006746 | 9/15/2005 | Invoice | 09-05 | 40,322.85 | 40,322.85 |
| 006747 | 10/1/2005 | Invoice | 10-05 | 40,000.00 | 40,000.00 |
| | | | | 565,501.51 | 565,501.51 |

# Avue
# Exhibit C

In the Matter of the Arbitration between   )
                                                    )

DCI Group, LLC,                           )
                                                    )

       and                         )  Case No. 76 181 00340 05 CALC
                                                    )

Avue Technologies Corporation.        )
                                                    )

## ANSWERING STATEMENT AND COUNTERCLAIMS
## OF AVUE TECHNOLOGIES CORPORATION

      AVUE TECHNOLOGIES CORPORATION ("AVUE") hereby responds to the Statement of Claim filed by DCI Group, LLC ("DCI") and counterclaims as follows:

      1.    Avue lacks information sufficient to enable it to admit or deny this allegation.

      2.    Admitted.

      3.    Admitted.

      4.    The Consulting Agreement ("Agreement") speaks for itself.

      5.    Denied as to claims concerning charges relating to the so-called "TechCentralStation Sponsorship" ("TCS Sponsorship"). The agreement of the parties with respect to the TCS Sponsorship was not intended by the parties as an amendment to the Agreement and was not set forth in a "written amendment signed by both parties" as expressly required by Sections 6 and 7 of the Agreement. Accordingly, neither the arbitration provision nor any other provision of the Agreement applies to the disputes concerning the TCS Sponsorship. As there is no other arbitration agreement between the parties, this tribunal lacks authority and jurisdiction to arbitrate the claims relating to the TCS Sponsorship.

      6.    This averment does not require a response.

      7.    Admitted that DCI provided some consulting services to Avue, but denied to the extent that this allegation suggests or implies that DCI complied with the terms of the Agreement with respect to the "best efforts" requirements of the Agreement. DCI breached the Agreement by failing to use its best efforts as required by Section 6 of the Agreement in the period after August 2004. DCI is therefore not entitled to payment under the Agreement for any months from September 2004 to the present.

8.     The Agreement speaks for itself.

9.     Denied.

10.    Denied.

11.    Denied.

12.    Denied.

13.    Denied.

14.    Denied.

15.    Denied.

16.    Denied.

17.    Denied that DCI is entitled to any attorneys' fees.

18.    This averment does not require a response.

19.    Avue denies that DCI is entitled to any of the relief that it seeks in Paragraphs 1 through 5 of its Prayer for Relief.

## COUNTERCLAIMS

### FIRST COUNTERCLAIM
(Consulting Agreement Payments)

1.     Avue incorporates herein its responses set forth above in Paragraphs 1 through 19.

2.     The Agreement provides that it can only be amended by a writing signed by both parties. *See* Agreement, §§ 6, 7.

3.     The parties never signed a writing amending the $20,000 per month fee established by Section 4 of the Agreement.

2

4.      Despite there being no amendment of the Agreement, DCI unilaterally increased the monthly fee under the Agreement from $20,000 to $30,000 beginning in June 2004.

5.      Without realizing that an unauthorized rate increase had occurred, Avue mistakenly paid the $30,000 fee for the months of June, July, and August 2004, thus paying a total of $30,000 more than the parties had agreed.  Avue is therefore entitled to recover $30,000 from DCI.

SECOND COUNTERCLAIM
(TCS Sponsorship Payments)

6.      Avue incorporates herein its responses set forth above in Paragraphs 1 through 19.

7.      It is Avue's position that this tribunal lacks jurisdiction over any claims relating to the TCS Sponsorship.  Accordingly, this Counterclaim is asserted only in the event that this tribunal nevertheless seeks to exercise jurisdiction over DCI's claims relating to the TCS Sponsorship.

8.      DCI failed to perform the services that DCI had promised to provide in connection with the TCS Sponsorship.

9.      Avue made payments totaling $150,000 relating to the TCS Sponsorship.  Because DCI failed to perform the promised services in connection with this Sponsorship, Avue is entitled to recover the $150,000, or at least most of that amount, that was paid to DCI.

PRAYER FOR RELIEF

WHEREFORE, Avue Technologies Corporation requests a reasoned award as follows:

1.      Denying all of DCI's claims for relief relating to the Agreement.

2.      Dismissing all of DCI's claims relating to the TCS Sponsorship for lack of jurisdiction, or, if the tribunal seeks to exercise jurisdiction over such claims, then denying all of DCI's claims for relief relating to the TCS Sponsorship.

3.      Awarding Avue $30,000 plus interest pursuant to its First Counterclaim.

3

4.  In the event the tribunal seeks to exercise jurisdiction over DCI's claims for relief relating to the TCS Sponsorship, then awarding Avue $150,000 plus interest pursuant to its Second Counterclaim, or such other sum as may be deemed just and appropriate.

5.  Awarding Avue such other and further relief as may be deemed just and proper.

Respectfully submitted,

Andrew H. Marks
Crowell & Moring LLP
1001 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
(202) 624-2920

Counsel for Avue Technologies Corp.

December 19, 2005

4

## CERTIFICATE OF SERVICE

Pursuant to the Rules of the American Arbitration Association, a copy of this Answering Statement and Counterclaims has been served this 19th day of December by e-mail and first-class mail to:

Henry Stein, Esq.
Stein & Stein
2826 South Carriage Lane, Suite 100
Mesa, AZ  85202

Andrew H. Marks