IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| AVUE TECHNOLOGIES CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DCI GROUP, L.L.C.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Civil No. 06-0327<br>)<br>)<br>)<br>) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION TO STAY ARBITRATION**

Defendant DCI Group, LLC ("DCI") submits this Memorandum of Law in Opposition to Plaintiff's Motion to Stay Arbitration. Plaintiff Avue Technologies Corporation's ("Avue's") Motion To Stay should be denied for either of two reasons. First, and most significantly, under controlling legal authority, the arbitrators, and not this Court, should determine the scope of arbitration under the Consulting Agreement (the "Agreement"). Second, even if the Court were to determine it is indeed the proper forum to resolve whether certain claims are arbitrable under the Agreement, the Tech Central Station-related claims clearly arise out of the Agreement with DCI and, thus, are arbitrable.

**INTRODUCTION**

On March 9, 2004, Avue and DCI executed an Agreement with an effective date of December 1, 2003. That Agreement calls for DCI to "assist and advise" Avue with respect to "agreed-upon legislative and administrative initiatives." Sckolnick Decl., Ex. 3, Section 1. The Agreement is silent, however, with regard to the specific initiatives to be undertaken and contemplates subsequent agreement on actual initiatives DCI was to perform. DCI and Avue

disagree with respect to whether Avue is obligated to pay some or all of DCI's fees for one of the initiatives undertaken by DCI on Avue's behalf, the Tech Central Station ("TCS") initiative. Beginning in September 2004, Avue stopped paying all fees to DCI in breach of the Agreement. *See* Sckolnik Decl., Ex. 1.  On November 28, 2005, pursuant to the terms of the Agreement, DCI commenced an arbitration action with regard to Avue's failure to pay fees.  See Pl.'s Motion, Ex. B.

DCI and Avue agree the Agreement includes a binding and enforceable arbitration provision.  Section 8 of the Agreement states:

> "Any claim, dispute, controversy or other matter with regard to this Agreement shall exclusively be subject to final and binding arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association…."

Sckolnik Decl., Ex. 3, Section 8(c).  Avue does not dispute that a portion of DCI's claims are subject arbitration under Section 8 of the Agreement.  Pl's Motion ¶ 16.  Avue, however, asserts that the Agreement does not cover claims and counterclaims relating to the TCS initiative and asks the Court to stay arbitration as to the TCS-related claims.

As discussed below, Avue ignores that, under the Agreement and the Commercial Rules of the American Arbitration Association ("AAA Rules"), it is the Arbitrators, not the Court, which must decide the scope of the Agreement and the parties obligations there under to resolve disputes by binding arbitration.  As the Agreement does not specify the specific initiatives included under the Agreement, the issue of whether the TCS-related claims are subject to arbitration is a threshold issue to be determined by the Arbitrators.  Accordingly, this Court need go no further to resolve the dispute before it.  The Court should simply deny Plaintiff's Motion To Stay thereby permitting Avue to formally raise its objections to the arbitration panel.

Even if it were appropriate for this Court to decide the scope of the parties' obligation to arbitrate in the first instance, the plain language of Agreement Section 1 makes clear that the scope of DCI's duties was to be broad and flexible, as subsequently "agreed upon" by the parties." Sckolnik Decl. Ex. 3, Section 1. As set out below, the parties' post-December 1, 2003 conduct demonstrates that both DCI and Avue believed that the Agreement encompassed the TCS initiative. Accordingly, the payment of fees for the TCS initiative is covered by the Agreement and, is "subject to final and binding arbitration."

For the above-stated reasons, the Court should deny Avue's Motion for Stay.

## BACKGROUND

A.  **Applicable Federal and State Law**

Although Plaintiff filed its motion to stay under the District of Columbia Arbitration Act ("D.C. Arbitration Act"), D.C. Code ANN. § 16-14301 *et seq.*, the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.* governs after removal. Further, under Section 8(b) of the Agreement, Arizona law shall apply to matters relating to "construction" and "enforcement". To the extent the FAA and the D.C. Arbitration Act conflict, the Supreme Court has made clear that the FAA controls. *See Doctors Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Thus, either federal substantive law or Arizona law governs the question of arbitrability. *See Buckeye Check Cashing v. Cardegna*, 2006 U.S. LEXIS 1814 (Feb. 21, 2006).

The Agreement at Section 8(b) states that Arizona law controls. Sckolnik Decl., Ex. 3, Section 8(b). Accordingly, Arizona law, the forum law selected by the parties, should be applied to resolve this dispute. *See Volt Information, Inc. v. Board of Trustees*, 489 U.S. 468, 477; *Flight Systems v. Paul A. Laurence Co.*, 715 F. Supp. 1125, 1130 (D.D.C. 1989) (where the parties have chosen to apply a particular state's law, the FAA does not preempt the choice). Further, however, if the Court were to apply the law of the District of Columbia, the result would not

differ. For purposes of completeness, this brief will address laws under the State of Arizona law and the Federal Arbitration Act.

## ARGUMENT AND POINTS OF AUTHORITIES

Avue's Motion To Stay should be denied. First, contrary to Plaintiff's view, it is the arbitrators, and not this Court, that should determine the scope of the Agreement and the parties' obligations there under to submit to binding arbitration. Second, even if the Court were to determine it is indeed the proper forum to resolve Avue's challenge as to the arbitrability of the TCS initiative, that initiative arises out of the Agreement with DCI and, thus, is arbitrable.

### A.     The Arbitrators, Not This Court, Should Determine The Arbitrability of the TCS-Related Claims

Under the terms of the Agreement, the question of whether claims related to the TCS initiative are arbitrable is question for the arbitrators -- not the Court. Section 8 of the Agreement states that: "arbitration shall occur in accordance with Commercial Arbitration rules of the American Arbitration Association." Sckolnik Decl., Ex. 3, Section 8(c). The AAA Rules are, therefore, a part of the contract and control the resolution of "any claim, dispute controversy or other matter . . ." Sckolnik Decl., Ex. 3, Section 8(c); *Brake Masters v. Gabbay*, 78 P.3d 1081, 1087-88 (Ariz. App. Div. 2003). Numerous other courts have held that a reference to the AAA Rules in a contract incorporates those rules into the contract. *See Rainwater v. National Home Ins. Co.*, 944 F.2d 190 (4th Cir. 1991); *Commonwealth Edison Co. v. Gulf Oil Corp.*, 541 F.2d 1263, 1272-73 (7th Cir. 1976); and *Bryson v. Gere*, 268 F.Supp. 2d 46 (D.D.C. 2003).

Rule R-7 of the AAA Rules states as follows:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, **scope** or validity of the arbitration agreement.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an

> arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for tha reason alone render invalid the arbitration clause.
>
> (c) A party must object to the jurisdiction of the arbitrator or to the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.  (***emphasis added***)

Because the AAA Rules apply to the Agreement, the parties have agreed that any issue as to the **scope** of the arbitration is to be resolved by the Arbitrators.  Further, under Rule 7(a), the Agreement's silence as to the specific duties to be performed requires the Arbitrators to decide this issue.  Avue's Motion attempts to place the Court in the role of resolving issue.  By prior agreement of the parties, decisions on arbitrability have been removed from the jurisdiction of the Court.

This position is well-grounded in law.  In *First Options of Chicago, Inc. v. Kaplan*, a case relied upon by Plaintiff, the Supreme Court addressed the question as to whether the court or the arbitrators shall have the duty to determine questions concerning the arbitrability of claims.  The Supreme Court held that the Arbitrators shall have authority to decide issues respecting arbitrability if there exists "clear and unmistakable evidence" that the parties agreed the arbitrator would have such authority.  514 U.S. 938, 943 - 944 (1995).  Moreoever, in *Brake Masters v. Gabbay*, 78 P.3d 1081 (Az. Ct. App. 2003), the Arizona Court of Appeals was confronted with an issue remarkably similar to that raised here.  Specifically, the Court was faced with the question as to whether the Court, or the arbitrator, ought to decide questions as to arbitrability where the parties adopted the AAA Rules.  *Id.* at 1088.  The Court resolved this issue by squarely holding that the arbitrator, not the Court, shall make primary determination as to questions of arbitrability.  *Id.* at 1087-88.

Second, the arbitration clause itself is broad and is intended to be construed broadly. A legion of cases interpreting similar arbitration language as that in the Agreement support the proposition that such a provision is to be construed broadly and applied to disputes related to the Agreement. *See, e.g.*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985); *City of Cottonwood v. James L. Fann Contracting, Inc.*, 877 P.2d 284 (Az. Ct. App. 1994); *Booker v. Robert Half International, Inc.,* 315 F.Supp 2d 94 (D.D.C. 2004); *Nur v. K.F.C., USA, Inc.*, 142 F.Supp.2d 48 (D.D.C., 2001).

Further, Avue is estopped from arguing to the contrary. In arbitration pleadings, Avue has recognized the primacy and applicability of the rules of the AAA Rules. In this regard, Avue filed an objection to the jurisdiction of the arbitrators, and in so doing, Avue relied on Rule 7(a) in protecting its interests in the arbitration and sought relief from the Arbitrators on the very issue asserted in its Motion. S*ee Pl's Motion, Ex. B*. Avue recognized that this issue is for the Arbitrators. Avue, cannot now disavow applicability of the Agreement or of the rules and it is estopped from doing so. *John C. Lincoln Hospital v. Maricopa County*, 96 P.3d 530, 535 (Az. Ct. App. 2005); *American Century Mortgage Investors v. Unionamerica Mortgage and Equity Trust*, 355 A.2d 563, 565 (D.C. Ct. App. 1976).

Thus, the Court's inquiry should go no further. The question of whether the TCS initiative is within the scope of the arbitration clause is one that must be decided by the Arbitrators, not this Court. Accordingly, the Court should deny Plaintiff's Motion to Stay Arbitration.

    B.    **Claims Regarding the TCS Initiative are Arbitrable.**

In the alternative, if the Court were to decide that it may determine the arbitrability of the TCS claims, it should, nevertheless, deny Plaintiff's Motion to Stay. The TCS initiative comes within the scope of the arbitration provision of this Agreement.

On March 9, 2004, DCI and Avue executed an Agreement that was first effective December 1, 2003. Sckolnik Decl, Ex. 3, Page 4. The Agreement does not define the exact initiatives to be performed by DCI. See Sckolnik Decl., Ex. 3, Section 1. To account for this lack of specificity, the Agreement was written to be inherently flexible. The Agreement stated that the initiatives would be as subsequently "agreed upon" by the parties. *Id.* During the course of their relationship, Avue authorized and DCI pursued the TCS initiative in addition to other consulting and lobbying services. Avue does not deny that DCI performed the TCS initiatives. DCI charged for the TCS initiative and Avue did not object to the charges and paid them for many months. Sckolnik Decl., Ex. 1 and 2. In fact, by the time the parties documented their Agreement on March 9, 2004, DCI had been providing TCS services for over four months. *Id.* Avue subsequently paid for all of the services provided by DCI from December 2003 through August 2004. *Id.*. For these reasons, it is clear that the TCS initiative comes within the very flexible language of Section 1 of the Agreement between the parties.

On these undisputed facts, Plaintiff's motion should be denied and arbitration should proceed.

    **C.**    **Plaintiff's Arguments That a Motion to Stay Is Appropriate Are Not Persuasive.**

Plaintiff argues that the Agreement's merger clause bars arbitration of issues related to the TCS initiative and that the TCS initiative is, in effect, the product of a separate agreement. Pl's Motion ¶ 7. This argument ignores the broad scope of the Agreement and its plain terms. The Agreement did not define the scope of services and contemplated subsequent discussions

and agreements between the parties with respect to the scope of services to be provided. Further, under Arizona law, such oral agreements regarding the scope of services are appropriate. In *Phoenix Orthopedic Surgeons v. Peairs*, the Arizona Court of Appeals wrote, "the general rule in most jurisdictions is that parties to a written contract may alter or modify its terms by a subsequent oral agreement even though the contract precludes oral modification." 790 P.2d 752, 755-756 (Ariz. App. 1989), *disapproved on other grounds,* 194 Ariz. 363, 982 P.2d 1277 (1999); *Almada v. Allstate Ins. Co.*, 285 F.3d 798, 800 (9th Cir. 2002) (accord); *see also Clark v. Clark*, 535 A.2d 872, 876 (D.C. App. 1987); *Howard University v. Good Food Services*, 608 A.2d 116, 127 n.9 (D.C. 1992). Importantly, in this case, the Agreement allowed for flexibility in services to be provided and a flexible scope of services was agreed to and incorporated into the Agreement.

Finally, Avue argues that *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) bars arbitration of the TCS claims. However, as discussed above, this case actually supports the proposition that the arbitrators ought to make a primary determination about the arbitrability of the TCS-related claims. *See supra* at 5. Moreover, this case was decided prior to the amendments to the AAA Rules that were designed to address the issue faced by the Court in *First Options. See Brake Masters Systems, Inc.*, 78 P.3d at 1087, n.4 ("The revised AAA Rule 8(a)[1] took effect January 1, 1999, and was specifically designed to address the Court's holding in *First Options*.").

In addition, *First Options* may be distinguished from the instant case. In *First Options*, the factual issue presented was whether a party to the lawsuit was also a party to the Agreement containing the arbitration provision. The case deals with the "scope" of an agreement to arbitrate

---

[1] The Rule number has since been changed from 8 to 7.

only as it relates to the parties bound, not the claims in dispute. In *First Options,* a corporation signed an agreement that included an arbitration clause. However, individuals who had a relationship with the corporation did not sign the agreement in their capacity as individuals or natural persons. The Court held that because the individuals did not sign in their individual capacity the individuals were not parties to the agreement and, on that basis alone, the dispute with the individuals was not arbitrable. In this case, the parties to the lawsuit signed the arbitration clause. The scope of the Agreement as it relates to parties is not at issue.

Given the foregoing, *First Options* does not operate to confer jurisdiction on this Court to resolve the questions as to arbitrability of the TCS-related claims nor does it otherwise support the notion that the TCS-related claim is severable from the issues already before the arbitration panel. If anything, *First Options* is supportive of DCI's position.

## **CONCLUSION**

It is undisputed that the Agreement contains a requirement that "any claim, dispute or controversy" with regard to the Agreement shall be resolved by arbitration under the AAA Rules. Rule 7(a) of the AAA Rules directs the arbitrators to decide the scope of the arbitration clause and the matters in dispute. The parties have delegated the issue of scope of the arbitration provision to the arbitrators. If the Court decides to make a decision regarding the scope of the arbitration provision, the undisputed facts show that the matter at issue, the TCS initiative, was indeed within the scope of the Agreement and this matter is arbitrable. Plaintiff's Motion to Stay Arbitration should be denied.

Dated: March 2, 2006

Respectfully submitted,

LATHROP & GAGE L.C.

By: _____/s/_____
　　Robert L. Gulley, D.C. #394061
　　Franklin Square, Suite 1050 East
　　1300 Eye Street, N.W.
　　Washington, DC  20005
　　Telephone:  (202) 962-0032
　　Telecopier:  (202) 962-0357
　　rgulley@lathropgage.com

　　Richard N. Bien
　　Adam B. Walker, D.C. #474029
　　LATHROP & GAGE L.C.
　　2345 Grand Blvd., Suite 2800
　　Kansas City, MO  64108-2684
　　Telephone:  (816) 292-2000
　　Telecopier:  (816) 292-2001
　　rbien@lathropgage.com
　　awalker@lathropgage.com

　　Jill Holtzman Vogel, D.C. #459240
　　HOLTZMANVOGEL PLLC
　　98 Alexandria Pike, Suite 53
　　Warrenton, VA  20186
　　Telephone:  (540) 341-8808

　　ATTORNEYS FOR DEFENDANT
　　DCI GROUP, L.L.C.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 2nd day of March, 2006, a true and correct copy of the Defendant's Opposition to Plaintiff's Motion to Stay Arbitration, Statement of Material Undisputed Facts, Declaration of Howard Sckolnik with Exhibits, and Proposed Order were served via overnight mail and via the Court's Electronic Case Filing/Case Management system, to the following attorneys of record in this case:

      Andrew H. Marks
      Crowell & Moring LLP
      1001 Pennsylvania Avenue, NW
      Washington, DC  20004
      **Attorney for Plaintiff**

                                                                                               _____/s/_____
                                                                              Robert L. Gulley