*Consulting Agreement*

December 1, 2003

Mr. Doug Davenport
DCI Associates – a division of DCI Group, L.L.C.
1133 21st Street, NW,
Suite M100
Washington, D.C. 20036

Dear Doug:

    This will serve to confirm our mutual understanding and agreement that DCI Associates– a division of DCI Group, L.L.C., (hereinafter referred to as "Consultant") will be engaged to serve as a consultant to AVUE Technologies Corporation (hereinafter referred to as "Client").

Section 1
Duties:

    Consultant will assist and advise Client with respect to agreed-upon legislative and administrative initiatives. Consultant shall act solely as an independent contractor, not as an employee or agent of Client. Accordingly, Client will not exercise control over the manner, time, or place in which any services rendered by Consultant or its members, officers, agents, and employees are performed. Unless specifically authorized in writing, Consultant agrees not to enter into any agreement on behalf of Client and agrees that it shall not represent to any third party that it has authority to enter into any such agreement. Additionally, Consultant understands that it will not be eligible for any Client employment benefits currently provided to employees of Client.

Section 2
Compliance with Applicable Laws and Regulations:

    Subject to the foregoing, all services rendered by Consultant in the term of this engagement will be rendered in accordance with all applicable federal and state laws and regulations, including, without limitation, the Federal Election Campaign Act of 1971, as amended, the Gift Rules Guidelines of the United States Senate and House of Representatives, the Standards of Ethical Conduct of Employees of the Executive Branch, and the Lobbying Disclosure Act of 1995, as amended.

Section 3
Term of Agreement:

This Consulting Agreement will become effective on December 1, 2003 and shall terminate according to the paragraph immediately following.

This Consulting Agreement may be terminated by either party upon sixty days written notice. If either party terminates this Agreement upon sixty days written notice, Consultant will receive compensation through the end of the 60-day period, or the agreed-upon termination date, whichever is later.

Section 4
Compensation:

Consultant will charge a monthly retainer fee of $20,000, paid monthly, plus all reasonable out-of-pocket expenses, including travel-related expenses. Consultant shall submit the monthly invoice on or about the 15th of the month for which services are performed. Consultant shall submit invoices for out-of-pocket expenses on a monthly basis. Invoices shall be due upon receipt.

Section 5
Confidentiality:

From time to time, Client may share with Consultant non-public or proprietary information related to Client business in order to assist Consultant in performing the services outlined in this Agreement. All such information, whether provided orally or in writing, shall be considered confidential. Consultant agrees not to disclose any such information to any person not an employee or agent of Consultant without the prior written consent of Client and to provide prompt notice to Client of any judicial or quasi-judicial demand for such information.

Likewise, the Client may become aware of information about Consultant, its business operations, and its methods of performance that may be highly confidential and proprietary to Consultant, and which is generally not known to the general public or in the business which Consultant and its other clients are engaged. Client will treat all such information as confidential, unless such information is in the public domain. Client agrees not to disclose any such information to any person not an employee or agent of Client without the prior written consent of Consultant and to provide prompt notice to Consultant of any judicial or quasi-judicial demand for such information. The duty to maintain the confidentiality of all such non-public information shall continue during the term of this Agreement and for a period of three years after it expires.

Section 6
Performance of Services:

Consultant agrees to commit its best efforts to the fulfillment of the terms of this Agreement. Consultant's duties and obligations under this Agreement are material and a breach of any of them shall

be grounds for immediate termination of this Agreement for specific performance. Consultant's duties and obligations under this Agreement are not assignable without Client's prior written agreement.

The terms of this Agreement shall be considered confidential, and may not be disclosed to any third party without the express written agreement of Client, subject, however, to Consultant's obligations to file reports as required by law with any governmental entity. This Agreement contains the entire understanding between the parties regarding this consulting relationship, and there are no other agreements, oral or written. This Agreement may be modified or amended only by a written amendment signed by both parties. Your signature below will indicate your understanding of, and concurrence with, all the terms and conditions of this Agreement.

Section 7
Entire Agreement:

This Consulting Agreement constitutes the entire Agreement between the parties with respect to the subject matter hereof, and supercedes any and all agreements, negotiations, communications, writings, and understandings, either oral or written, between the parties hereto with respect to the rendering of Services by Consultant for Client and contains all of the covenants and agreements between the parties with respect to the rendering of such services in any manner whatsoever. Each party to this Agreement acknowledges that no representations, inducements, promises, or agreements, orally or otherwise, have been made by any party, or anyone on behalf of any party, which are not embodied herein, and that no other agreement, statement, or promise not contained in this Agreement shall be valid or binding. Any modification of this Agreement will be effective only if it is in writing signed by the parties hereto.

Section 8
Miscellaneous:

(a) This Agreement may not be assigned by either party by agreement or operation of law without the written consent of the other party. Nothing in this Agreement, express or implied, is intended to or shall (i) confer on any person other than the parties hereto, or their permitted successors or assigns, any rights to remedies under or by reason of this Agreement; (ii) constitute the parties hereto partners or participants in a joint venture; or (iii) appoint one party the agent of the other.

(b) This Agreement shall be deemed to have been made in the State of Arizona, and shall be construed and enforced in accordance with the law of the State of Arizona, without reference to principles of conflicts of laws thereof.

(c) Any claim, dispute, controversy or other matter in question with regard to this Agreement shall exclusively be subject to final binding arbitration in accordance with the Commercial Arbitration rules and regulations of the American Arbitration Association (AAA). The parties shall not submit claims for punitive damages, and do hereby waive any right to the same, and the arbitrators shall not be authorized to award punitive

damages. The parties or the arbitrators, as appropriate, shall undertake the duties of the AAA under the AAA rules. All arbitrations shall be conducted in the State of Arizona.

(d) This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, and such counterparts together shall constitute but one and the same instrument.

(e) This Agreement shall not be binding upon Client or Consultant unless executed on its behalf by a duly authorized Officer or Member. Client and Consultant, and the individuals executing this Agreement represent such individuals have been and are duly authorized by all necessary and appropriate corporate or other action to execute same on behalf of Client and Consultant, respectively.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized Officers and/or Members.

By: _____  
Linda Brooks  
Co-Chief Executive Officer  
AVUE Technologies Corporation  
1142 Broadway Plaza, Suite 400  
Tacoma, WA 98402  

Dated: 3/9/04

By: _____  
James D. Miller  
Co-Chief Executive Officer  
AVUE Technologies Corporation  
1142 Broadway Plaza, Suite 400  
Tacoma, WA 98402  

Dated: 3/9/04

Concurrence:

DCI Group, L.L.C., and its  
DCI Associates division

By: _____ Dated: 3/9/04  
Tim Hyde  
A Managing Member